TOBIN, Secretary of Labor, v. HUDSON TRANSIT LINES, Inc.

Civ. A. No. 11173.

United States District Court

D. New Jersey.

Jan. 31, 1951.

John A. Hughes, Regional Atty., and Henry J. Easton, Atty., U. S. Department of Labor, New York City, and William S. Tyson, Jeter S. Ray, of Washington, D. C., for plaintiff.

James F. X. O'Brien, Newark, N. J., for defendant.

MEANEY, District Judge.

Plaintiff brings this action to enjoin defendant from violating the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., hereinafter called the Act. Jurisdiction is conferred by section 17 of the Act, 29 U.S.C.A. § 217, and by section 1337 of the Judicial Code, 28 U.S.C.A. § 1337.

### Findings of Fact

1. Defendant is a Delaware corporation engaged in interstate bus transportation, its principal place of business being at Mahwah, N. J.

2. Marion Thompson, Margaret Murphy and Jeannette Wilkes were employed in a clerical capacity at the offices of the defendant. Prior to January, 1950 there existed an arrangement made by these employees among themselves with the approval of Gertrude Hewitt, the office supervisor, whereby each girl would work 35 hours one week and 42 hours the next week. Records of the hours of work were not kept. Since January, 1950 these employees have been paid on an hourly basis, working 35 hours per week. Proper records of the daily and weekly hours of each of these employees are now maintained.

3. Katherine Hunter and Veronica Stiech worked more than 40 hours a week at the Mahwah office for a period of four weeks during the summer of 1948, and they were compensated for the overtime worked at the rate of one thirty-eighth of their weekly salaries for each hour of overtime.

4. Melvin Lybolt, John Blair, Hyman Fradin, Harry Gordon, James Vincent Mettiace and David Dragon are dispatchers: their regular duties consist of loading passengers, baggage and express, and dispatching the buses by telling the drivers when to take buses out. They sell tickets and make out dispatch sheets and ticket reports. They check the loading of baggage on overhead racks to see that none of it is placed so that it might fall down and injure the passengers. The baggage and express stowed in compartments underneath the bodies of the buses are checked by these men to insure equal distribution of weight. They keep passengers out of the way of moving buses at the terminals and transfer points. They assist passengers in boarding and alighting from buses. They take care to see that no more than the permitted number of standees is carried in the buses. Occasionally the dispatchers make minor repairs to the buses, such as adjusting brakes or fixing windshield wipers. They have authority to take a bus out of service if it appears dangerous to run. They work more than 40 hours a week and are paid straight time.

5. Donald Baker, a dispatcher, was conceded to be exempt from the provisions of

the Act, since it appeared that it was a part of his duty to drive buses carrying passengers.

6. William Blauvelt does mechanical work and body repair work. He replaces posts between the windows, puts panels in, fixes seats, rewires buses, fixes lights, replaces glass that may be broken or cracked, and repairs baggage racks and grab-rails that may be loose. His hours of work exceed 40 per week, and he is paid straight time.

7. John Grost is assistant to the superintendent of maintenance. His duties are to help inspect buses, take care of inspection records, inspect undercarriages and axles, and to maintain preventive maintenance records. He works more than 40 hours a week and is paid straight time for all hours worked.

8. August Oetzel, Jr. and Charles Oetzel work at Harriman, N. Y. They sweep up the office, put gas in buses, help transfer passengers and baggage from one bus to another, wash buses, do minor repairs, fix flat tires, oil buses and fix lights. If passengers miss a bus, they drive them to the next transfer point in a company car. They drive the company car to pick up mail, and occasionally drive a bus after it has broken down. They both work more than 40 hours a week and are paid straight time.

9. Gilbert De Groat, Sr. and Gilbert De Groat, Jr. work at Mahwah, N. J. They are mechanics' helpers working on preventive maintenance on springs, wheels and other parts. They grease parts, put gas in buses, help in making repairs, drive buses around garage, check for loose bolts, and inspect fire extinguishers and first aid kits. They work more than 40 hours weekly and are compensated on a straight time basis.

10. Arthur Buttress, Sr. and Martin H. Morris are employed by defendant as gas attendants at Mahwah, N. J. Their duties consist of driving buses from the garage down the highway to the gas pumps, and servicing buses coming in which need gas and oil. While so servicing buses, they observe casually whether fire extinguishers, axes and first aid kits are in place; they also look for oil or air pressure leaks, and check the tires; before gassing buses, they direct all passengers to leave, and caution them against smoking. They also clean buses and keep the place around the gas pumps clean. Their hours of work exceed 40 a week and they are paid on a straight time basis.

11. Robert Buttress works for the defendant corporation at Mahwah, N. J. as a stock clerk. He checks parts that go out of the stock room, buys necessary parts, and checks fire extinguishers to make sure they are full. He also checks first aid equipment and fire axes on buses in for preventive maintenance. He keeps a record of parts put in buses, checks to see that flares, fuses and flags are provided. He inspects used parts to determine whether they are to be replaced. He works more than 40 hours a week and is paid straight time.

12. Alice Greenfield is employed as a ticket seller and office assistant at Monticello, N. Y. During the summer her hours are from 4 P.M. to 12 midnight, in winter from 3 P.M. to 10 P.M., six days a week. Her time off averages 1 hour per day. Occasionally she has been paid an extra day's pay for extra work done on busy week-ends. Since January 1, 1950 her hours of work have been recorded on a form provided by the defendant corporation.

13. Kenneth E. Bamberger has been employed as a dispatcher since May, 1946, at Mahwah, N. J. During a portion of that time he also served as night foreman of maintenance but now functions exclusively as a dispatcher. As a dispatcher he now directs others in driving buses, sees that passengers are loaded and unloaded in safety, and transfers baggage. While he was night foreman he had two mechanics under his supervision, Stafford and Fitzgerald, who repaired defects in the buses, two washers, Charles Le Bar and Floyd Robbins, who would also occasionally help the mechanics and move buses, and Romalo Gallupo, who cleaned the interiors of the coaches.

14. Rudolph Hilbig is employed as a painter; he works more than 40 hours weekly and is paid straight time. In addi-

534

tion to painting, Hilbig fixes broken seats; he takes lights off and checks them; he replaces wiring, replaces with safety glass any broken glass, and works on windows and posts.

## Discussion

Defendant quite readily admits that violations may have occurred with respect to the clerical employees discussed in Finding of Fact number 2. It urges, however, that since the overtime work was the result of an arrangement worked out by the employees themselves, and in view of the fact that the practice has been discontinued, no injunction should issue. That the working of overtime hours was the result of an arrangement made by the employees themselves, would not excuse a violation. However, it would seem inequitable to issue an injunction in a situation such as this, where the violation did not exist at the time of trial, and a recurrence does not seem likely.

■■■ The defense raised, with respect to most of the other employees, is that provided by § 13(b) (1) of the Act, 29 U.S.C.A. § 213(b) (1), which exempts "* * * any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * *." The test of the Interstate Commerce Commission's power to establish maximum hours has been held to be whether the employee's activities affect safety of operation. Levinson v. Spector Motor Service, 1947, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158. However, this power may not rest upon the performance of work which forms a trivial, casual or occasional part of an employee's activities. Pyramid Motor Corp. v. Ispass, 1947, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184. In the light of these decisions and the body of law which has been developed in this field, the court concludes as follows.

## Conclusions of Law

■■■ 1. No injunction should issue with respect to the clerical employees discussed in Finding of Fact number 2.

■■■ 2. Since Katherine Hunter and Veronica Stiech were compensated on a salary basis, it is doubtful whether any violation occurred with respect to them. See: Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. At any rate, the method by which they are now paid would seem to be in full compliance with the Act. No injunction should issue concerning the method of compensating these employees.

■■■ 3. A substantial part of the duties performed by the dispatchers is concerned with safe transportation of the passengers and consequently must be held to affect safety of operation. For this reason no violations of the Act are found to exist as far as the dispatchers are concerned.

■■■ 4. The activities of William Blauvelt, John Grost, Gilbert De Groat, Sr. and Gilbert De Groat, Jr. are mainly concerned with keeping the buses repaired and in good mechanical condition. This work bears a direct relation to safety of operation, consequently it is concluded that they are exempt from the coverage of the Act.

■■■ 5. August Oetzel, Jr., Charles Oetzel, Arthur Buttress, Sr. and Martin H. Morris are essentially gas attendants. The other duties performed by them, which are alleged to affect safety of operation, are of a trivial, casual or occasional nature and thus do not warrant an exemption. The driving of buses from a garage to a tranfer station, without carrying passengers, is likewise not the type of activity which would justify exemption from the Act. These employees are, however, engaged in interstate commerce. The court concludes, therefore, that they are not exempt from the coverage of the Act and that their employment for more than 40 hours a week, without payment of overtime compensation, is in violation of the Act. See McComb v. New York & New Brunswick Auto Express Co., Inc., D.C.N.J. 1950, 95 F.Supp. 636; Ex parte No. MC 2, 28 MCC 125, 139.

■■■ 6. Robert Buttress performs duties in interstate commerce which are

primarily of a clerical nature. His checks of parts and accessories are more for the purpose of seeing that usable parts and accessories are not discarded before their useful life has expired, rather than in the interests of safe operation. For this reason he is held to be covered by the provisions of the Act. It follows, therefore, that his employment in excess of 40 hours weekly, without payment of overtime compensation, is in violation of the Act.

7. Since the defendant corporation now keeps a record of the hours of work of Alice Greenfield, it would seem unreasonable to impose the sanction of an injunction for this purpose. But her regular hours during the summer months exceeded 40 weekly, and the evidence shows that she was given extra compensation only on those occasions when she did extra work on busy week-ends. As a ticket seller she was, of course, engaged in interstate commerce. It thus appears that violations occurred in those weeks in the summer when she worked more than 40 hours weekly and was not properly compensated for the overtime.

8. The mechanics, Stafford and Fitzgerald, referred to by the dispatcher Bamberger, are held to be exempt.

9. The testimony concerning the activities of Charles Le Bar and Floyd Robbins, the bus washers, and Romalo Gallupo, who cleans the buses, would seem to indicate they are covered by the Act. However, the evidence does not sufficiently indicate that these men worked more than 40 hours weekly, nor how they were paid. Consequently the court refrains from concluding that any violations have taken place with respect to these employees.

10. The work performed by Rudolph Hilbig, the painter, in addition to his painting duties, appears to be incidental to his principal duty of painting and of a trivial, casual or occasional nature. He is nevertheless, engaged in interstate commerce. It is concluded, therefore, that he is not exempted from coverage of the Act and that violations have occurred with respect to his employment.

11. Plaintiff is entitled to an injunction in accordance with the findings and conclusions herein expressed.

Settle form of judgment on notice.